ChoolUNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| | ) |
| **WACHUSETT POTATO CHIP CO., INC.** | ) |
|      **Plaintiff,** | ) |
| | ) |
| **vs.** | )     **CIVIL ACTION** |
| | )     **NO. 07-40029-TSH** |
| **MOHAWK BEVERAGE, INC.** | ) |
| **& FLORINDO A. SIMONE,** | ) |
| **Individually,** | ) |
| | ) |
|      **Defendants.** | ) |
| | ) |

**MEMORANDUM OF DECISION
AND ORDER**

**November 18, 2010**

**HILLMAN, M. J.**

**Nature of the Proceeding**

By Order of Reference dated September 11, 2007 and by consent of the parties, this case

was referred to me for all purposes, including trial and entry of final judgment, in accordance with

28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  On September 21, 2010, following a two day jury

trial, both parties filed motions for judgment notwithstanding the verdict.  I took the matter under

advisement.  For the reasons that follow, Defendant's motions are denied.

**Nature of the Case**

Plaintiffs Wachusett Potato Chip Comany, Inc. ("Wachusett" or "Plaintiff") brought this

action against Mohawk Beverage, Inc. and Florindo A. Simone, as an individual ("Defendants").

Wachusett asserts two claims against Defendants stemming from goods that Wachusett sold and

delivered for which they allege they have not been paid.  Plaintiffs filed a two-count Complaint in

the Fitchburg District Court, Worcester County (Civil Action No. 08-2395) in January 19, 2007.

Because the action involves diversity of the parties and an amount in controversy in excess of

$1.1 million, Defendants successfully removed the case to this court, pursuant to 28 U.S.C. §

1332.

## I.  Procedureal Background

This case arose out of a debt incurred by Mohawk Beverages to Wachusett when Mr.

Simone was president of the company.  The Court presided over an two-day jury trial beginning

on September 20, 2010.  At the close of the Plaintiff's case, Defendants filed a motion for

directed verdict pursuant to Fed. R. Civ. P. 50(a); the court reserved ruling.  After 8 hours of

deliberation, the jury returned a verdict in favor of the Plaintiff's on both counts in the amount of

$1,169,098.94.  Both parties filed motions notwithstanding the verdict pursuant to Fed. R. Civ. P.

50(b).[1]  Pending before the Court are the Defendants motion for directed verdict made at the close

of the Plaintiff's case and motion for judgment notwithstanding the verdict.  The Court reserved

ruling on both motions and now makes the following rulings.

## II.  Factual Background

In 1989, Wachusett Potato Chip Company, Inc. ("Wachusett") entered a business

relationship with Mohawk Beverage, Inc. ("Mohawk") in which Mohawk delivered products

manufactured by Wachusett to retailers including Price Chopper supermarkets ("Price Chopper").

Tr. 1-43.  At the time, Florindo Simone ("Simone") was the President, Treasurer, and sole

---

[1]       Plaintiff filed its motion titiled "judgment notwithstanding the verdict" prior to the verdict, so the
Court would have treated it as a judgment as a matter of law.  The jury's verdict in its favor moots the issue, and
with it, the motion.

shareholder of Mohawk.  Tr. 1-105.  Edward Krysiak ("Krysiak") was the President and

Treasurer of Wachusett.  Tr. 2-21.

In a typical transaction, Mohawk sent an order to Wachusett (*see* Exhibit 3), and when

Mohawk picked up the order, Wachusett sent an order form and packing slip to Mohawk. Tr. 1-

45-46 (*see* Exhibit 4A-4C).  Mohawk delivered the product to Price Chopper, and upon verifying

the delivery, Mohawk then sent Price Chopper an invoice for the products delivered including a

mark-up of either twenty or twenty-five percent depending on the particular product.  Tr. 1-74.

Once Price Chopper paid Mohawk, Mohawk sent a check to Wachusett for their share of the

revenue.  Tr. 1-76.  The amount Wachusett was due was reported on both the invoices, Tr. 1-76,

and on the monthly statements Wachusett regularly sent Mohawk.  Tr. 1-104.  The original terms

of the purchase and sale agreement required Mohawk to pay Wachusett within thirty days of

delivery, but in reality Mohawk often sent payment much later as the company fell further and

further in debt. Tr. 1-76-77 (*See* Exhibit 4D-4E).

In April of 1997, Wachusett and Mohawk met to address Mohawk's increasing debt.  Tr.

2-24.  Mohawk's debt had grown to more than $1.1 million, Tr. 1-18. Both companies agreed to

change the process by which they did business.  Tr. 2-24.  When Mohawk sent Price Chopper an

invoice, it specified Mohawk's vendor number as the account to be paid; after April 1997,

however, Mohawk agreed to replace its vendor number on the invoices with Wachusett's vendor

number. Tr. 2-26.  This meant that the entire payment for the delivery went directly to Wachusett

instead of Mohawk.  Tr. 2-26.  This change is described in a letter from Simone to Wachusett.

(*See* Exhibit 10).  After being paid by Price Chopper, Wachusett would send Mohawk a check for

a percentage of the revenue – the same percentage Mohawk was entitled to keep prior to the new

payment arrangement.  Tr. 1-81, 2-16 (*See* Exhibit 6A-6G).  Following this change, Wachusett

continued sending Mohawk invoices with the deliveries, but ceased sending monthly statements.

Because Price Chopper was paying Wachusett directly after April of 1997, a central issue

in the case focused on whether Mohawk was a purchaser or distributor of Wachusett's products.

Mohawk was in fact a distributor of another manufacturer's products, Polar Beverage, Inc.,

("Polar"), and charged Polar a set fee for each unit delivered to retailers.  (*See* Exhibits 18, 19).

Here, Mohawk was entitled to a percentage of revenue derived from selling Wachusett products

to Price Chopper, and this percentage remained the same both before and after 1997 – the only

difference was Wachusett paid Mohawk instead of Price Chopper after 1997.  Tr. 1-81.

In addition, Simone and Krysiak agreed to take out a life insurance policy on Simone's

life and list Wachusett as the beneficiary as a way to secure the debt. Tr. 2-27.  Initially the policy

was for two-hundred fifty thousand dollars, but it was increased to one million dollars.  Tr. 2-27.

Simone agreed to pay the premium for the policy, but he failed to do so and Wachusett paid the

premium until the policy ended around 2006 or 2007.  Tr. 2-31.

Wachusett's motivation for the April 1997 changes was Mohawk's growing debt to

Wachusett, along with pressure from Wachusett's lenders to address the debt.  Tr. 2-25.  Mohawk

agreed to the changes to maintain the business relationship with Wachusett and keep Mohawk

afloat.  Tr. 1-80.

From April 1997 until the end of the business relationship between Wachusett and

Mohawk in March 2004, the debt remained unchanged. Tr. 1-66.  After April 1, 2004, Mohawk

no longer delivered Wachusett's products to Price Chopper.  Tr. 1-58 (*See* Exhibit 8).  Instead,

Price Chopper decided to transport Wachusett's products themselves.  Tr. 1-43.  There were no

conversations between Mohawk and Wachusett regarding the debt as business between the two

companies dwindled in 2004, Tr. 2-28, but it was not until 2006, after several inquiries over the

phone, that Wachusett discovered Mohawk was no longer in business.  Tr. 1-59.

On July 24, 2006, Mohawk entered into an asset purchase agreement (*See* Exhibit 17) with

Polar, in which Polar agreed to pay $2,622,000 for, among other things, Mohawk's business

assets including trucks, machines, and other equipment, and distribution rights for brands such

including Polar and Cadbury.  Tr. 1-98-100 (*See* Exhibit 17, Schedule 1).  In addition, Polar

agreed to pay Mohawk's outstanding debts to companies such as Penske Truck Leasing and MVP

Health Plan, totaling $82,282.21, in exchange for product inventory from Mohawk's warehouses

valued at $70,000.  Tr. 1-99 (*See* Exhibit 17, Schedule 2).  Polar also agreed to extinguish

mortgages it held on Simone's properties, and to hire Simone, giving him a $125,000 salary and a

pension plan.  Tr. 1-101.  Mohawk did not notify Wachusett of this asset purchase agreement, nor

did Mohawk file a tax return for the fiscal year 2006.  Tr. 1-102.

On September 27, 2003, as part of an audit of their accounts, Wachusett mailed Mohawk a

letter confirming the debt owed by Mohawk.  The letter was confirmed and signed by Simone,

and returned to Wachusett (Docket No. 60, attachment 1).  This interaction between Simone and

Wachusett was confirmed by Simone in paragraph 11 of the *Answer of Florindo A. Simone to

First Amended Complaint* (Docket No. 31).

**III.  Discussion**

### *Stand ard of Review*

Under First Circuit law, judgment as a matter of law is warranted pursuant to Fed.R.Civ.P.

50(a)(1) where "there is no legally sufficient evidentiary basis for a reasonable jury to find" for

the non-moving party.[2] *Guilloty Perez v. Pierluisi*, 339 F.3d 43, 50 (1ˢᵗ Cir. 2003) (quotations

omitted).  A district court may grant a motion pursuant to Fed.R.Civ.P. 50(b) only if after

examining the evidence and all reasonable inferences therefrom in the light most favorable to the

nonmovant, it determines that the evidence could lead a reasonable person to only one conclusion,

favorable to the movant.  *Caldwell Tanks, Inc. v. Haley & Ward, Inc.*, 471 F.3d 210, 214 (1ˢᵗ Cir.

2006) (citation and quotation marks omitted).  The district judge may not, therefore, "displace a

jury's verdict merely because he disagrees with it or would have found otherwise in a bench

trial."  *Ahern v. Scholz*, 85 F.3d 774, 780 (1ˢᵗ Cir. 1996) (internal citation omitted).  Put

differently, Rule 50(b) relief is warranted only if the evidence "is so one-sided that the movant is

plainly entitled to judgment, for reasonable minds could not differ as to the outcome."  *Gibson v.

City of Cranston*, 37 F.3d 731, 735 (1ˢᵗ Cir. 1994).  See also *Murray v. Ross-Dove Co.*, 5 F.3d

573, 576 (1ˢᵗ Cir. 1993) (proper to allow motion where evidence "would not permit a reasonable

jury to find in favor of the plaintiffs on any permissible claim or theory").  Evidence and

reasonable inferences therefrom are viewed in a light most favorable to the nonmovant.  *Mangla

v. Brown Univ.*, 135 F.3d 80, 82 (1ˢᵗ Cir. 1998).

### *Analysis*

Defendants moved for judgment as a matter of law, and following the jury's verdict in

favor of Plaintiff, judgment notwithstanding the verdict.  Defendants sole argument is that the

statute of limitations had run on Plaintiff's claims and that, therefore, the claims must fail.  Both

parties argree that the applicable statute of limitations in this case is four years, pursuant to Mass.

---

[2] The distinction between a motion for directed verdict, the motion filed by the Defendants here, and a motion for judgment as a matter of law is merely a formality; the motions are to be treated as the same for the purposes of Fed. R. Civ. P. 50(a)(1).  See *Advisory Committee Notes to 1991 Amendment, Federal Rules of Civil Procedure*, *Subdivision (a)*.

Gen. L. c. 106, §2-725 of the Uniform Commercial Code (UCC). Defendants argue that the

business arrangement between Wachusett and Mohawk ended in the April of 1997, and

emphasize that the roles of the parties changed fundamentally at that time from being one of

wholesaler selling to a reseller to one of a supplier (Wachusett) and a commissioned broker

(Mohawk). Defendants further urge that because the nature and extent of Mohawk's indebtedness

to Wachusett was well know to both parties at that time, Plaintiff's cannot argue fraudulent

concealment of the indebtedness, pursuant to Mass. Gen. L. Ch. 260, § 12. Finally, Defendants

contend that there was no evidence of acknowledgement or promise to pay that would extend the

statute of limitations pursuant to Mass. Gen. L. Ch. 260, § 16.

Plaintiff suggests that it was within the jury's discretion to determine the facts relating to

when the cause of action accrued, as to when the four year period for bringing suit began to run,

and as to whether any invervening events caused tolling of the statutory period. Plaintiff take

issue with Defendants argument that no acknowledgment of the debt existed, that would extend

the statute of limitations after the April 1997 date. Specifically, Plaintiff cites two trial exhibits,

Joint Exhibit 1, the First Amended Complaint (the "Complaint") and Joint Exhibit 2, Defendants'

Answer (the "Answer").

In Paragraph 11 of the Complaint, the Plaintiff alleged that "in a series of financial

statements signed by Florindo A. Simone and presented to Wachusett's accountant from 1998

through 2003, Mohawk has admitted that it is indebted to Wachusett on its credit sales balance in

an amount in excess of one million one hundred thousand dollars ($1,100,000)." In their Answer

to Paragraph 11, both Defendants admitted to this allegations in the Complaint. Plaintiffs urge

that these signed statements by Mr. Simone, on behalf of Mohawk, were signed confirmations of

the debt, within four years of the filing of the suit pursuant to Mass. Gen. L. c. 260, § 13 and

removes the case out from any limitations defense or bar under Section 2-725 of the UCC.

Plaintiff further suggests that the evidence presented throughout the trial supports an in inference

by the jury that the limitations period did not begin to run on the action until the final invoice was

sent, which it believes was April of 2004.

The Court finds that Plaintiff provides persuasive grounds for denying the Defendants'

motion and finds little to argue with.  While the signed confirmations were not a major player

during the trial, the Complaint and Answer were legitimate exhibits that were admitted and were

agreed to by the parties.  Clearly, the jury used this evidence in it determination that Wachusett

brought the present action on this debt to Mohawk on a timely basis.

**IV.  Conclusion**

The jury's finding for the plaintiff is clearly supported by the evidence.  The evidence was

fully and adequately presented by both sides and the jury reasonably reached the verdict it did.

Defendant has, therefore, failed to convince the court that it is entitled to a judgment as a matter

of law.  Accordingly, Defendant's motion for a directed verdict (Docket No. 50) and Motion for

Judgment Notwithstanding the Verdict (Docket No. 52) are DENIED; Plaintiff's Motion for

Judgment Notwithstanding the Verdict (Docket No. 51) is DENIED as moot.


/s/Timothy S. Hillman
TIMOTHY S. HILLMAN
MAGISTRATE JUDGE